Your Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, Oyez, Oyez. All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw a nine and give their attention for the court is now sitting. God save the United States and this Honorable Court. You may be seated as you go. Good morning, Your Honors, and may it please the Court, may you go for the Bohons? You may be seated. Your Honors, the Fifth Amendment right to just compensation is triggered at the time of the taking, and that right is secured by a jury trial. The decision below should be reversed for three reasons. First, if there is any defective report, it's MVP's, not Mr. Gruelle's. Second, the appropriate forum to address these types of factual disputes is cross-examination. And third, Mr. Gruelle did conduct a larger parcel analysis. Turning to my first point, Your Honors, the Supreme Court has told us both when and what is to be valued in eminent domain cases. With respect to the first question, when, in U.S. v. Dow, 1958, the Supreme Court told us that possession is the event that, quote, fixes the date as of which the land is to be valued. That's up on page 22. The Court reiterated that in 2019, Nick v. Township of Scott, where they said on page 190, quote, and we have explained that the act of taking is the event which triggers the claim for compensation. So we know the answer to the when, it's when the District Court issues the order for immediate possession. The issue in this case is the what part of the equation. And that's also answered in Nick v. Township of Scott. Also page 190 through 192, the Supreme Court tells us that compensation, quote, must generally consist of the total value of the property when taken. If we apply that to this case, we see that everybody agrees on the when. And that was March 7, 2018, when the District Court issued the orders for possession. The issue is the what. And if we turn to the record, and we look at Mr. Thompson's appraisal, JA222, Mr. Thompson says that the gas pipeline easement was recorded on February 22, 2018. That's MVP's appraiser. Now, if we compare that to the actual court documents, JA222. Which report are you referring to? MVP's report, Your Honor. Joe Thompson's appraisal. I see. I see. JA222. So these cases, the main cases, are interesting in that you started out by pointing to the right to the jury trial. Of course, you have rule 71.1. Really makes a difference in terms of how these cases are being handled, because the judge essentially, for non-just, I guess, just compensation matters, is really to try out a fact on it. But you have an evidentiary rule of 702 that seems to come into play. And here, what it seems like to me, maybe I'm mistreated, is you have a first report from you, and then a second report. The problem there is if you start with examining MVP evidence, the judge has already excluded all of yours. So is that where you want to start with, or do you want to start with saying that what you had is something that the judge shouldn't have excluded, because if we go to Thompson's report, which is the MVP report, and the other one that he had, then that's a whole different consideration. So where are we in your discussion here? Are you first, or is the primary view to say he should have discovered, considered the second report, or that the first report wasn't properly considered, or shouldn't have excluded it? How do you deal with that? The lower court erroneously excluded Mr. Grell's first report. It was not defective. And as we know, this court, to address your- The reason I ask is because of the way you started. You started with dealing with MVPs. And I'm not saying you shouldn't, I'm just, it was curious to me that you went there instead of saying your report is what the judge should have received, because it certainly has a higher valuation than the ones from the MVP. Yes, Your Honor. I was, and I'm happy to address that first. I think that- It's up to you. I mean, it's up to you. That's what I'm, I mean, I'm not trying to tell you how to argue a case, but I was curious as to why you did that. Well, because there's an egregious factual omission in Mr. Thompson's report that I wanted to quickly point out before I got to- And if you want that, then what would happen? Well, if anybody deserves summary judgment, it's the landowners, because our argument is that Mr. Grell's report was not defective, and that Mr. Thompson's report- So you get summary judgment on, from the, from the, well, this whole business, summary judgment. The case that we had before, we got into this business again, but it's summary judgment 71.1. Yes, Your Honor. And so the question is, you know, what, which one does the judge deal with, and how, it's not a stage, but it seems like there's a different process in it. You talk about 70, summary judgment, but the judge is a trial factor on the 71.1, so it makes that confusing. Well- Again, I'm not trying to tell you how to argue a case. I was only curious as to why you started, and you said there's an egregious error in the Thompson report, which there may be, but if you get that, then what do you get? Then you end up with, what is the evidentiary information before the judge that would give you summary judgment? Because it's not yours. Yours has been excluded, and you just have that. Well, the issue is the same. My point with regards to Mr. Thompson's report was that he took into account this so-called pre-existing easement, and the McGraw report was knocked out because he didn't take into account that easement, but it's actually the opposite. That easement was not recorded until six days after the take. Am I right that the de-transferring this tract to the Bohans also wasn't recorded until after the taking? That's right. So the de- So how can it be that you can count the tract, the Terman tract, in the property, but not the easement that was across it when the Bohans took ownership of it? Because those are two different questions. So which amount of property is affected goes to the larger parcel analysis, which is a facts and circumstances analysis. That's why the different experts come to different conclusions, because when you're looking at the larger parcel, unity of title is only one of the factors. You look at unity of use, title, ownership, and contiguity. So that's why we have different experts with different reports, whereas the easement recording, that is an explanation of why- It's still- Okay. I'm sorry. Go ahead. So it seemed, and I really don't fully understand what happened here, but it seemed like Mr. Grewell himself sort of thought, wait a minute, if you're going to count the tract at all, you also have to count the easement over it, and hence the second revised report. But then your client said, no, no, we don't want to go with what he, the expert himself, thought was the corrected report. We'd like to go with the one that the expert has already moved away from, the first report. Is that what happened? There were two reports, Your Honor, that's correct. But our argument is that the reports, either one is admissible. A factual dispute relating to one aspect of the property doesn't render the entire report defective. And if it did, then Mr. Thompson's would be excluded as well. And to address Judge Wins- But you don't get either one on the first or second report, because your counsel essentially said you weren't relying on the second counsel, and your counsel said that the Bowens didn't own the Truman tract. Your counsel said that, right? Yes, but that, so the deed was not recorded until March 20th on the- We're only trying to deal with which report we're looking, and it looks like insofar as the second report, your counsel, maybe another word, waived that. I mean, when he got it and said, we don't use that. We don't need that. We don't rely upon it. Open his words. And the first report is admissible as well. I think this court, in the- So you can only, do you agree you can only rely upon the first report for this and not the second, because your counsel basically excluded the second one? I think the record does reflect that counsel did withdraw the second one, and the first one is the one that counsel was relying on. I'm saying what the record reflects. What I want to hear is what you say. You do agree that we do not look at that second report because he withdrew it. Yes, Your Honor.  Yes. Okay, good. Yes, and yes. And turning back to Rule 71, I think it's important to note that Rule 71 says that the issue of compensation is reserved for the jury. And we have from the Supreme Court and from this court, in the Frank Terry opinion issued in May, this court, the Fourth Circuit, said that the jury can accept or reject any part of the expert's report. They don't have to accept it wholesale, the court said, which means if the expert comes out with six or seven things, the jury can say, well, we believe him on these five things, but we don't believe him on these two things. And the issue of accuracy of the report goes to the jury. And I think if we look at the other case law, the ACP case we've cited, Rover Pipeline that we've cited, that's a West Virginia case, ACP is in the Western District, the same district that we're in. If we look at Columbia Gas, that's a decision out in Pennsylvania. All of those courts had similar issues and even more egregious things. And the district court said, you know what, this is a question for the jury. The jury hears the evidence and they decide which expert to believe. And that's where our argument is that the district court erred in throwing out the entire report as opposed to saying, okay, the jury can hear this and then hear it on cross-examination and then decide what's correct and what's not. Turning to my second and third points, Your Honors, specifically in the Columbia Gas decision, there were legal ambiguities that the court in Pennsylvania said are unclear to the experts. And the court, instead of knocking out the entire report, the court said the more proper approach is for the jury to hear his assumptions, hear all of the factual evidence as to the scope and burden of the present easement. See, this is where it gets confusing getting to me. You're saying jury, and I agree jury deals with just compensation, but 71.1 allows the judge to be the trial fact and you have rule 702, the evidence rule, that deals with reliability, I guess a garbage standard of whether an expert's opinion would be considered. This court determined it was unreliable and basically said that, you know, your expert opinion, because there was really no analysis of this larger hollow possible, which you have to have. It gets muddled because the question is when does 702 come into play here in 71.1? But at the very least, it seems to me the court should determine the reliability, methodology and whatever for garbage standards to see if this expert is reliable, not to examine. But when you get to 71.1, you then can determine, well, are there facts and data to support the conclusions? What this judge said was there's nothing there but a conclusion or a statement. There's nothing there, no analysis of this larger parcel in terms of the kind of facts that there are in other cases. So if that report is thrown out, you've already gotten rid of the second one. Is there any basis upon which you can rely upon to say that you're entitled to a summary judgment? Because you have no evidence. If the reports are all thrown out, then there's no competing evidence. That's correct. But our argument is that the report was erroneously thrown out. Not reports. The report. The report, yes, Your Honor. The report, number one. Two, you got rid of it. The first report, yes, Your Honor. Yes. So if that's thrown out, you have nothing. Correct. This judge, so then our question is, is did the judge properly determine that you didn't have an analysis of that larger parcel, the evidence there from this expert such as to support that conclusion that he has? The district court erred in concluding that Gruell did not conduct a larger parcel analysis and on the reliability question. And if we look at Rule 702, it specifically says sufficient facts and data. Your Honors, it doesn't say perfect facts and data. And the truth is, there is no such thing as a perfect expert report. The only perfect report that we get is the one that the jury gives us after the jury trial. Can you clarify this for me? Are you saying that you entitled to damages on that Truman tract? Your Honor, that depends on what the jury finds. I think that's appropriate for the jury to hear. What are you seeking? Do you think that you're entitled to that, given the fact that the counsel said you didn't own the Truman tract at the time of the taking? Your counsel says that on the record. Your Honor, I see my time has expired. You may respond. Your Honor, we are saying that the term in parcel is part of the larger parcel and that that can be taken into account as part of the larger parcel analysis because he did have that contract of purchase in 2015. He had the settlement agreement in 2017. And experts do disagree on the larger parcel analysis. I would point the court specifically to the ACP case. I think I know what you're alluding to about the larger parcel analysis and the factors, but you're saying it can include, you can get severance damages on land you don't own. He already had an interest in the property, Your Honor. So you don't have to own the land to get the damages. That's correct because unity of use is the first factor and the most important factor that's considered. I think it assumes ownership. You're saying those three factors don't assume that you own the land in question. They do not assume ownership. A unity of title, a unity of ownership is only one of the factors. That's why we have different reports. No, I think the unity of ownership means how much weight do you give to the fact that the same person owns both tracts of land. But you're saying there is no assumption in that analysis that the land for which the landowner is seeking compensation is owned by, I just said landowner, the landowner doesn't have to own the land. Well, that is only one of the factors, Your Honor. And if that were the dispositive test, then our point is Mr. Thompson's report would also be defective because they also valued the term in parcel in their analysis as well, which means that their report would be defective. And what we're saying is that all the reports should be admitted and the jury can hear and weigh the testimony just like the district court concluded in ACP where they said the expert ray actually in the ACP case said that the subject property was 20 acres and then added two extra parcels that were not even identified in the complaint. And the district court Judge Moon said, you know what, this is a question for the jury. We look at this as a whole and yes, this seems a little bit out there, but that's for the jury to decide and weigh. Can you give me an example of you're not owning the second tract but you have an interest that would allow evaluation to be determined by that? You said that's just one factor, owning, and like Judge Harris, that seemed like a big one. But can you give me a hypothetical answer that is you don't own it, but an interest that you would profit would be sufficient to meet the continuity of use standard interest that's sufficient to allow an evaluation, including that property? I don't have a case that has that. Not a case, but can we just in terms of just plain sort of property law? I think if you have an interest already in the property. What is the interest? I mean, I like the property. I might want to buy it one day. What is the interest if you don't own it? I'm just giving a hypothetical answer. So if you have a contract already in place and it's not recorded, then you have an interest in the property. Maybe you're harvesting timber. When you say you have a contract but it's not recorded, you don't normally record a contract. You record the sale and English covenants and those things like that. You mean you have a contract that has not been executed yet because you haven't transferred a title? The contract has been executed, but the title has not been transferred, which is what happened here. Isn't that more or less what happened on the easement too? The easement had been taken and it just hadn't been recorded yet. It sort of seems like either you can do a functional analysis or you can go based on the date when something is recorded, but how do you get to mix and match? Well, because the larger parcel analysis, whether that specific part of the property should be taken into account, that's a totality of the circumstances test that the experts disagree on. So it's a battle of the experts, whereas the easement and whether there should be a reduction for the so-called pre-existing pipe, that is an assumption that the expert makes. In West Virginia, in Pennsylvania, even in the Western District, courts have routinely said that the assumptions go to the credibility, not the admissibility of the evidence. We saw that in ACP, we saw it in Columbia Gas in the Middle District of Pennsylvania. The district court actually said there's a large dispute here because Columbia Gas was saying only one small part of the property is affected, and the landowner is saying no, no, the entire property is affected, and the district court said this is a legal ambiguity, but the jury has a right to hear that and they're going to decide which part is credible and which one is not. When you come back on rebuttal, would you take a look at the Campbell case, the United States Supreme Court case, that essentially, at least my reading of it, says that you only get damages for property you own, but when you come back, would you address to me why if maybe I'm reading that case wrong, or the interpretation is different? Thank you, thank you, Your Honor. Thank you, Ms. Deaver. Mr. Land? Excuse me. Seth Land from Mountain Valley Pipeline. The property in this case is comprised of two tracts. One of those tracts is M0022, that's what's been referred to in this condemnation, and that's a combination of some original acreage that the Bohons owned and the Terman tract, which is the tract that came along later that's been discussed earlier. The Terman tract was acquired subject to a pre-existing easement in favor of MVP. There was a contract between Terman and Bohon for Bohon to purchase the property before the taking, and then there was a settlement agreement between Terman and Bohon where Terman would keep the compensation from MVP and Bohon would get the property for free instead of the purchase price in the contract. Then Terman grants an easement to MVP, and then there's a deed of boundary line adjustment adding the Terman property to the pre-existing acreage. So we know for a fact that the Terman tract was acquired by the Bohons subject to a pre-existing easement. So you made this as complicated as you could to bring this matter to us, didn't you? Well, the facts are complicated, but they're not disputed. After the Terman tract was incorporated into MOU22 by boundary line adjustment, the complaint was amended to include the Terman acreage into that original Bohon acreage and to change the route of the easement on the Terman slightly. Okay, so you had the taking on the original acreage, you had the pre-existing easement on Terman, and then you had a little bit of change of taking on the Terman, slight change. And the best copy of the map would be the amendments to the complaint, JA420, it shows all these things very clearly, shows the original acreage in the north, the Terman acreage in the south, the pre-existing easement, and the change to the Terman easement. The Bohons first claimed compensation on property that included the Terman acreage, but they did not account for the fact that the MVP had already acquired the Terman easement. That was Gruel's first report. Then the Bohons claimed compensation on property that did not include the Terman acreage, but in doing so they admitted part of the property at issue. That was Gruel's second report. On summary judgment, of course, MVP thinks, okay, second report, that's the report, that's what we have to deal with, so we have summary judgment on that track, on that report. And at that hearing is where the Bohons reverted back to... Procedurally, how does summary judgment fit into this, in an imminent domain procedure? In light of 71.1 and evidentiary considerations under the federal rules of evidence 702. Where does summary judgment fit in that order? Okay, well I think the district court took it in the right order. You tell me, how should that fit in? Yes, and the way I think it's done is, there was a motion to exclude Gruel, so that's where 702 comes in. That was the first motion. So the trial court should first make a 702 determination of reliability. Absolutely. Evidentially. Absolutely. And at that point, if the trial court makes a 702 determination that is reliable, what then happens? Or not reliable, what happens? Well, as in prior MVP cases before this court... No, no, I'm asking for a procedure, because you do these cases. I'm just trying to be educated in terms of what do you think, how do these things work in the process before it gets to a just compensation determination by the jury, or in this instance where you don't even get to the jury because the court says there's nothing there to take to the jury. Yes, your honor, well it has to come before the jury trial, right? Right. So we bring the motions, the motion to exclude experts, both sides generally do. That's a 702. That's under 702, your honor. And then what happens? And then we have a motion for summary judgment, but usually the summary... Before you get to the 71.1 trial of fact as a judge. I believe so, your honor. I believe that's the way it works. Because rules, rule 71.1 incorporates the other rules that are not inconsistent with it. And summary judgment is used in condemnation cases, in many condemnation cases. And does that arise, you said there's no dispute because in this instance the judge excluded all of the evidence by the landowner, two reports, there's nothing there, there's no other testimony, I guess. And then all you have, all he has before him is MVPs. So you say that's the basis of summary judgment. There's no 71.1 determination to be made. In this case I don't believe there was a 71.1 determination made. I got it. But it doesn't matter whether it's this case or any other case, if that follows, that is there's nothing here to dispute these facts. Correct. Assuming what we're in, if it's only the evidentiary part at the beginning of 702 regarded to experts, and you say experts can't come in, but then I assume you make determinations that the experts, the MVP do come in, where is it that the landowner get to question what's in the reports of the person, the one seeking in the domain if a summary judgment occurs before 71.1? Because summary judgment, there's no disputed fact, but you never got a chance to question it. So how does that happen? Well, Your Honor, in summary judgment, if you don't, if all the evidence is on one side and there's no material issue of genuine fact or genuine issue of material fact, then you don't have a jury trial. But all you've made a determination, the evidence, all you have from the evidence is a 702 determination that is reliable. But you have not examined whether the facts and the analysis are sufficient to support the conclusions, which is a prior fact or something has to happen, unless you just assume that. You see what I'm saying? If you move from 702 to summary judgment, all you've done is saying, MVP, you got reports, they're good, and there's no disputed fact, but the other side didn't get to question them. Or do they? Well, they wouldn't in that instance because that was the only opinion in evidence. Right? So that was it. What was it? You mean the expert opinion? The expert opinion was the only. But the only determination about that opinion that's been made is a 702 opinion, evidence. In other words, it's reliable, but it doesn't tell you, give you an, you don't get to examine whether the analysis is correct. In other words, whether the facts that are used support the data, because that's not a 702 determination. It's only a determination of reliability there. So where is it that the landowner, if you follow your line, if summary judgment comes before 701.1, where is it that the, you see where I'm going? I'm just trying to get a clarification. I understand. Is that not making any sense to me? No, I understand, but that report, that opinion, it's the only opinion in evidence. I got it. And that opinion is in evidence because 702 says it comes in evidence. But once it's in the evidence, the judge has to determine, do the facts and the data match up to the conclusion? In other words, this expert himself is reliable. Everything is there. The method that's used is correct. 702 is a gatekeeping function. It's not a merit to do, right? 702 is a DABA type function. So you got it in on the DABA. Once you get it in, you then look at it. So where is it it's being looked at is what I'm asking. If you do summary judgment immediately. Well, the judge did look at it, Your Honor, on summary judgment. For what? They looked at Thompson's report and determined, well, that's the only opinion in evidence. They can't do better than that at a trial or at least on summary judgment because there's no other evidence to, now it can be cross-examined, but on summary judgment, the fact that you could cross-examine a witness doesn't come into play on summary judgment. All right. So the Bohans claimed just compensation on property that did not include the term in acreage. That was the second report. As we've heard, they abandoned that. That was the first summary judgment. Let me make sure you understand where I was going with that. Yeah. It seems to me the judge would start with 702 and then maybe the 71.1 would come up because that rule says the judge is the trial fact on all issues other than just compensation. At that point, 70.1, he would look at those reports from you and then determine whether that analysis of the larger tract or the Truman tract should be, the problem with the other was all good or whatever. This is good. In other words, he determines those facts. Once he does that, there is no dispute. Then you've got summary judgment. But I'm having a hard time, maybe I'm just not reading it right, and I know we have a previous case from this court, two probably had the same struggle I did, but I'm not following how summary judgment is going to follow immediately after 702 determination without the 71.1. Well, in several condemnation cases, including two before this court and several of the others that we have cited in the briefs, where only one side has an appraisal, summary judgment is generally awarded in fate of the commoner. That's just the way it goes. So you're saying, counsel, then, that if the landowner had an expert that said the profit was worth $1 million, and you had an expert that said it was worth $20,000, if the court found that your expert's report was not reliable and struck it, then you wouldn't have a chance to say, okay, mine is gone, but that $1 million one needs to come down. In other words, you couldn't contest that. If the district judge followed all the other cases, yes. I think that's what Judge Wynn was asking. So you're saying that that's it. It's barred the door. That's the law, right? Yes. That's the way this court's ruled in the two previous MVP condemnation cases. I'm sorry, just so I understand. So you could have challenged it as unreliable. You could have tried to exclude that one, too. But so long as it's reliable and the other one is not reliable, that's it. There's no other challenge beyond reliability. There's no other evaluation and evidence, Your Honor, on summary judgment. Okay. So you're saying reliability on the 702 is sufficient even though it is a gatekeeping function. It doesn't fall into any other case now. When you have an expert opinion come in, that doesn't end the case if the other side doesn't have an expert. I mean, it's different. So I don't think it's condemnation 71.1. But in any other case, when you do a gatekeeping function and you let that expert opinion come in and nobody else has an expert opinion, there's no such thing as a summary judgment now because you got an expert and he doesn't have one. So I don't know why it's different in condemnation other than there still is that function, that trial fact function that's in the 71.1 that seems to me if you put it before the summary judgment, then I got it. Right. And the judge did look at the Thompson appraisal and said it was correct. Correct? I'm sorry. Said it was not just reliable but correct? Well, that it was at least accounted for all the facts. So if you... Yeah, no, I remember that part. I'm sort of new to this. So the other kinds of evidence you might have as to valuation, there's an appraisal and then sometimes the landowner can testify. And then what else might be... I'm just trying to figure out if you don't have an expert report, what have you got? Yeah, so that's generally the other type of opinion on value that's admissible. Is it a landowner's opinion and we don't have one of those in this case. Okay. So the district judge did look at Thompson's report and said look, Thompson accounted for the critical facts. He included the term and tract like Gruel did, like all the parties were proceeding, it's supposed to include that term and tract. That's what the other side said at the hearing and so that's what the judge was going with. It's supposed to include the term and tract. And we know for a fact that the term and tract was acquired subject to an easement. So she said look, Thompson's appraisal, MVP's appraisal, recognized all these facts. He recognized that the Belhan property was already devalued to some extent because of the preexisting easement and accounted for the fact that it would not be devalued by as much as it would be if this was the first easement being taken. And so in other words, there was a challenge to this Thompson appraisal and the judge said the challenge is no good. So is it your position, as I understood it, what the district court held was more or less the one thing you can't do is include the term and tract but not the easement. But as between the two alternatives, don't include the term and tract or the easement or include both, which one is correct in your view? In my view, it's absolutely correct to include the term and tract. Okay, how come since the Belhans didn't own it at the time of the taking? Well, there's three reasons, Your Honor. First, the Belhans were the equitable owners of the property on the day of the taking. They did not have a recorded deed but had a binding agreement to acquire the property. Under Virginia law, that's an equitable ownership. And under Rule 71.1, a connoisseur is required to join anybody who claims or has an interest. So once MVP was aware of that deed that came pursuant to that preexisting arrangement, Belhans was then added to that tract. And when they became equitable owners, was there an easement on the property that was So here's the way it goes. First, there was a contract. That's when they became equitable owners. Then there was the settlement agreement where Terman would get the cash for the easement. Belhans would get the property for free. So then that's when their interest changed from having to pay for the property and getting the full property to not having to pay for the property and having the easement on it. And so then the taking occurs and then the deeds catch up to the arrangement. Okay, sorry, I just wanted to know, in your conception, at the moment they become equitable owners, at that moment, is there an MVP easement on the Terman tract? No, that came before, after they were equitable owners, but before the taking. Okay, well then I don't understand your argument because I thought your whole point was that when they became owners of this land, there was an easement over it. But now you're telling me, no, they became equitable owners before there was an easement. Right, and then their interest changed, but it was all before the taking, right? So the question was, on the day of the take, what was the arrangement? On the day of the take. On the day of the take, the arrangement was they were equitable owners subject to an easement. Second, the Terman acreage became part of the main tract, M0022, by deed of boundary line adjustment. And by amendment to the complaint, which was agreed to between the parties that there would be an amendment, the route of the pipeline on the Terman property changed. So the Terman tract had to be included. It had a new little taking on it. It was part of M0022 by amendment to the complaint. So all of that happened before the appraisals in this case. So the appraisals, so Mr. Thompson looked at the amended map showing all these things, which was the most recent controlling map in the complaint. And then he did his appraisal based on that map. That's why the judge said he's doing it right. Gruelle, for whatever reason, includes that Terman tract, but does not account for the easement. And that's where, essentially, Gruelle would have made MVP pay twice for that same easement because he was taking a 40% adjustment to the entire acreage as if there was no pre-existing easement. Mr. Lamb, before you sit down, I want to make sure I have this correct chronologically. Yes. And you know, so you stop me when I'm wrong. Chronologically, contract to purchase, settlement agreement, the taking, the recording. Is that right? Yes. Okay, let's make sure. Yes, the first taking and the second taking. Correct. And here's the other reason why the day of the take doesn't really change this. Remember, the Bohans abandoned the second report. So the only reports that issued before the district judge were two reports that included the Terman tract. That was it. That was the only evidence in the case. Now, does an expert have to account for every detail? No. But an expert has to account for the critical controlling facts. Grille was certainly required to account for the fact that MVP had already acquired an easement on the Terman tract. It was not permitted to determine compensation as if that easement did not exist and essentially doubled the compensation. Those are all the points I wish to make. If you have any further questions, I'm happy to answer them. Thank you, Mr. Lane. Ms. Grille, you have some time reserved. Your Honor, just to address a few points opposing counsel made. Number one, there was no second taking. The taking was March 7, 2018. Nick v. Township of Scott, U.S. v. Dow. The Supreme Court has said there is one date of taking. And we look at the record, JA 512, JA 517. That was the date of the take, March 7, 2018. That's it. The boundary adjustment does not constitute another taking. So one taking. Number two, Mr. Lane keeps saying all the other cases that have ended in summary judgment before this Court. There are two cases, I think, that he's referring to, Briarwood and Hale. We've cited them. Very big difference between our case and those two cases. There was no expert hired in those two cases. They offered nothing. Mr. Bohan and his wife, Beverly, they hired. They went out of their way to hire an expert to pay money. They paid money for him. They proffered two reports. Yes, one was withdrawn in the lower court. But that's very different from the cases that Mr. Land is referring to. I'm sorry, can you? If by hypothesis, just assume for a minute, the expert report was properly excluded, at that point, they're the same, right? Because it's as though an expert was never hired. I mean, maybe not equitably. I understand what you're saying. It doesn't feel that way. But technically speaking, if an expert report has been excluded. I'm not sure that's entirely correct, Your Honor. And here's why. Because the jury is going to weigh three different things. The expert testimony, that is going to be very different between the two competing sides. The jury view. And then the lay testimony from the landowner. And this court has said that when the jury goes out to the parcel, they have, quote, wide latitude to make their own observations. So I don't think that it would be entirely the same. I'm not sure the specifics of those two cases, other than they did not actually even hire an expert. But there is no case that I can find where, in the cases that we do have, ACP, Rover, Columbia Gas, the district courts routinely address these issues. This is not an irregular situation. The pipeline company is always going to low ball and come up with a very low number. Just like the landowners, to be fair, they want the highest number possible. And so you're going to come with very different facts. And the jury is going to hear that. They're going to weigh it. They're going to make a determination. That's why we don't see these types of disputes in appellate courts, because district courts routinely say, you know what, that's a question for the jury, not for me. Moving to Dawberg. So on the questions, I was asking a lot of questions just for clarification. Initially, the trial court makes the determination on the 702 in terms of the admissibility of the expert's report. In your instance, if the trial court correctly excluded your first report, you talked about the second report, because basically your counsel said, withdrawing that, so you got the first report, and all you have left are the reports of MVP, following up on Judge Gregory's question, doesn't matter. It's the valuation. All you look at, you then go straight to summary judgment. Is that the way it goes? I think here, it went straight to summary judgment. I didn't see any other proceeding before that, and I believe that the process that Mr. Well, in my scenario, at least it looks like the trial court made a reliability determination on the 702. My question is, if the trial court excludes all of your evidence, and you have none, because you do have a burden toward justice compensation, all they have is a report from the experts that 702 reliability exists on. Is that the end of it? There's no actual determination of conclusions or analysis as to whether that expert, in fact, has done it? You just look right in the bottom figure, and that's it? No, Your Honor. Our position is that that is not it. There should be some sort of fact-finding going on, and here, it seems to have been a very What would that be? Is that 71.1 fact-finding? 71 is addressed in U.S. v. Reynolds, actually, is the case that discusses this issue, and that MVP heavily relies on, and the district court relied on. It's a 1970 case from the Supreme Court where they talked about the difference between the judge's determination and the jury's determination, and what is the proper scope. The Supreme Court said in Reynolds, now it is from 1970, but it's still good, they said that the judge is the one who makes the decision on the scope of the take. And MVP is trying to equate that with the judge is the one who makes the decision on the larger parcel analysis, and those are two different things. But if I understand, in this case, neither 71.1 nor jury trial occurred. Correct. My question is, is 702 exclusion of all of your evidence sufficient at that point to just say, okay, summary judgment for the other side, because they don't know they've got an expert? No, Your Honor, I don't think it's sufficient. He says there are cases that do it. I don't know which cases. He says cases just like they cite cases for incorrect propositions. He says Briarwood and Hale are the same. He says U.S. versus Reynolds stands for their proposition, and it doesn't when you actually read the case. But why not? 702 reliability would at least examine whether the facts are reliable to reach the conclusion. I mean, it's a methodology, it's a gatekeeping function, but is there something more to be examined with the Thompson report beyond saying he has a report and it's a reliable expert? You have nothing. Ball game's over. No, there are several factors that you look at. You look at general acceptance. Is it peer-reviewed? Is the methodology, is it going to aid the trier of fact in finding the facts? So you look at all of these factors. You don't just say you have a report and you don't. And also turning to reliability specifically, Judge Wynn, I think the line that we draw here is when does the gatekeeping function come into play? And what we see is that if the fact that is proffered is verifiable and falsifiable, then that goes in front of the jury. And that is the spirit of the scientific method. That's what's behind Dawbert is if you can have opposing counsel come before the jury and say, you know what, I think you missed something on this property. There's a hill here or there's a preexisting pipe. That is verifiable and that is falsifiable and that goes to the jury because those are contested facts. I think where the line is, specifically with respect to 702 where the gatekeeping function comes into play is where the expert maybe comes to the property, uses a Ouija board and says, you know, Benjamin Franklin told me the property is worth $10 million. So that's clearly not verifiable. It's not falsifiable. It's not scientific and that gets knocked out. But these factual disputes... So that's an argument for why the district court improperly excluded the report. But I just kind of want to go back to the question of if it was properly excluded. You just said something about Reynolds that was helpful to me, that what the judge makes findings about is the scope of the take. And that's not at issue here, right? So if that's what the judge makes findings about, then the judge does not make findings about the correctness of an appraisal. Correct. There's a distinction. The scope of the take... So then if we need a fact finding about whether the Thompson appraisal was accurate, it can't be the judge. It would have to go to the jury? So the jury would look at the assumptions on which Mr. Thompson made his appraisals and then would weigh that and consider it. And they can, as this court said, knock out any specific part that they wish. And let me just briefly address the whole you're trying to get MVP to pay for the easement twice. Because that's a big point that they make. They made it several times. If we look at JA-204, the term in easement, Mr. Terman got $125,000 for 39 acres of land. If we were trying to get them to pay twice, Mr. Grell's number would have been $250,000. It would have been double. But Mr. Grell's highest number, as we see from the first report, is $123,000. So nobody was trying to make MVP pay for the same easement twice. I'm not a mathematician. That's why I'm a lawyer. But the math just doesn't add up there with that respect. Let me just say, it seems to me procedurally this case could be affirmed if we took the same kind of position we take. Sometimes we have a motion to dismiss and evidence is considered. We will convert it to a summary judgment and say, well, we don't. We just take it as a summary judgment. It says, okay, the judge is summary. And then we go there. In this instance, it seems to me the judge has a 71.1 function. Counsel for the other side says, that wouldn't, I guess, I want to be clear. It sounds like to me he says, we didn't get there. We went to summary judgment immediately. I only postulate that he could do it if he went 71.1. That's what Reynolds actually said. If you said 71.1, you can do this. And it looks like to me if we just say, okay, you did 702. Then you did 71.1. We then determine, did you properly examine this report? Does the analysis make the fact? And then summary judgment occurs. That seems logically to me the way it should go. And we can, we possibly could say that. Because the judge can do it anyway. I mean, well, there's summary judgment here. And maybe this judge in doing this was thinking, you know, because she certainly had written, I mean, she does these cases all the time. You guys got hundreds of these cases out there. And so she knows this law on it. Why shouldn't we do that? I think the district court respectfully got the law wrong this time. I think it was, there were erroneous factual and legal conclusions. There seems to be a stricter standard that's being applied in this particular case than what we see in ACP, in West Virginia, in Rover, what we saw in Columbia Gas in Pennsylvania. Where if we look at ACP before Judge Moon, Ray actually admitted, I think under oath, that he did not conduct a larger parcel analysis. His impact percentage was 55%. He said he added in extra parcels, not even in the complaint. And the district court said, this is not for the judge to determine. I'm not the gatekeeper for these types of things. Because this goes to rule 703 and 705. This is not a 702 issue. So although there is a gatekeeping function, I think what we see routinely across the district courts is that that gate is fairly broad. I see my time has expired, Your Honors. Are there any other questions I can address? I just want to be clear, one quick question. Because you said there's something else left to do on your side. What evidence did you have? There was no landowner testimony. Yes or no? Mr. Bohan was deposed. Deposed, all right. So you're saying in his deposition, there was evidence that a jury could and should have been able to hear. And that would have been enough to give evidence. I'm assuming your report is gone. So Mr. Lawler indicated, and it's in the record, I have the citations, that Mr. Bohan was going to testify as to the integrated use of the property. So yes, the landowners were going to testify, and there would have been a jury view. Were they going to testify as to the appraisal value, or just whether the lower tract should have been included in the parcel? Their opinion, from what the record shows, they were going to testify as to the value and how they used the property. And that is just a layperson's testimony as to the valuation and the use of the property. Do you think that's enough to get you beyond summary judgment in any case? We have not addressed that question. But I'm asking you the question. Yes, Your Honor, I think it could be, yes. I think that the lay testimony combined with the jury view is competing factual evidence. A jury view, you said? A jury view, Your Honor, yes. You mean look at the property? Yes, so the jury goes out to the property, and if one expert, for example, says, this is why on page 3, I would direct the court to page 359 of the Frank Terry case, where this court said the jury can accept or reject any part of the expert's testimony and doesn't have to accept it wholesale. So we don't have to say, we agree with Mr. Gruel on the larger parcel analysis. They can accept Mr. Thompson's larger parcel analysis. And then they can say, well, you know what, we like the diminution in value. We agree with Gruel that it should be 40%. And they can combine those things. That's a settled law. Is there somewhere in your brief where you argue that even if, assuming that Gruel's expert report is out, summary judgment was improperly granted because you could have relied on landowner testimony? I believe we did argue that there was going to be the jury view and the lay person's testimony. So in this brief, it's going to say, even assuming we have no expert report, summary judgment was improperly granted. No, Your Honor, I don't think there's a separate section. I think that was argued together, that there were going to be three different things that the jury could weigh after we argued that the expert report was improperly omitted. In your appellate brief? Yes, Your Honor. We did cite the fact that Mr. Bohan was going to testify and there was going to be a jury view. All right. Thank you, Counsel. We'll come down and greet you and then we'll proceed to our next case. Thank you, Your Honor.
judges: Roger L. Gregory, James Andrew Wynn, Pamela A. Harris